# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DOUGLAS BADER, CHARLES DOYLE, and RALPH J. RINA, ) ) ) ) Plaintiff, ) ) v. ) ) AIR LINE PILOTS ASSOCIATION, ) INTERNATIONAL, ) ) Defendants. ) | No. 14 C 6415 Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Douglas Bader, Charles Doyle and Ralph Rina, have brought this action against their labor union, defendant Air Line Pilots Association, International ("ALPA"), claiming age discrimination under the Age Discrimination in Employment Act ("ADEA"), breach of the duty of fair representation ("DFR") implied by the Railway Labor Act, breach of contract under state law, and tortious interference with a business expectancy under state law. ALPA has moved for judgment on the pleadings under Rule 12(c), contending that plaintiffs' claims are legally insufficient, barred by the statute of limitations or preempted by federal law. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs were all Pilot Instructor/Evaluators ("I/Es") at Continental Airlines ("Continental") when Continental merged with United. United's longstanding practice, contrary to Continental's, is to require all I/Es to be "line-qualified," *i.e.*, to be qualified to fly a revenue-producing flight carrying paying passengers. Federal Aviation Administration ("FAA") regulations require all line-qualified pilots to be under the age of 65.

After the merger, ALPA and United negotiated a collective bargaining agreement, the United Pilots Agreement ("UPA"). The UPA, consistent with United's pre-merger practice, required all I/Es to be line-qualified. On December 18, 2012, ALPA and United implemented the line-qualification requirement via Letter of Agreement 18 (Compl., Ex. 2), which effectively terminated I/Es such as the plaintiffs, who had reached the FAA mandatory retirement age, after a 12-month grace period.

## ANALYSIS

### I. LEGAL STANDARDS

Rule 12(c) permits a party to move for judgment on the pleadings, which consist of the "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Hayes v. City of Chi.*, 670 F.3d 810, 813 (7th Cir. 2012).

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## II. ADEA CLAIMS

### A. Union Liability for Money Damages Under ADEA

ALPA claims that judgment should be granted in its favor on plaintiffs' ADEA claim because labor unions cannot be liable for money damages under the ADEA.

ADEA's substantive provisions concerning discrimination are similar to those of Title VII of the Civil Rights Act. *Compare* 29 U.S.C. § 623 (section 4 of ADEA) *with* 42 U.S.C. § 2000e *et seq.* (Title VII). For its enforcement mechanism, however, rather than following Title VII, the ADEA incorporates provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Section 7 of the ADEA, 29 U.S.C. § 626, states that "[t]he provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section"; that is, the ADEA selectively incorporates the remedial scheme of the FLSA into the ADEA.

The FLSA's penalties provision, 29 U.S.C. § 216, provides that employees may bring an action for money damages against an "employer"—but labor unions are expressly excluded from the definition of "employer," 29 U.S.C. § 203(d). Because this penalties provision is

3

incorporated into the ADEA, ALPA argues that no money damages are available against a union under the ADEA.

Neither the United States Supreme Court nor the Seventh Circuit Court of Appeals has addressed this issue directly, and the lower courts that have addressed it are split. ALPA relies principally on *Neuman v. Northwest Airlines, Inc.*, No. 79 C 1570, 1982 WL 313 (N.D. Ill. Apr. 30, 1982) and *ALPA v. Trans World Airlines, Inc.*, 713 F.2d 940, 957 (2d Cir. 1983) (citing *Neuman*) *affirmed in part, reversed in part on other grounds sub nom., Trans World Airlines v. Thurston*, 469 U.S. 111 (1985), which held that the ADEA does not allow money damages against labor unions because the FLSA, from which the ADEA takes its remedial structure, does not allow them.

In response, plaintiffs have cited a number of contrary decisions that have reasoned that the ADEA expressly prohibits discrimination by a labor union, 29 U.S.C. § 623(c); it incorporates the FLSA's remedial scheme selectively, not wholesale; and it additionally authorizes courts to "grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter,"[1] 29 U.S.C. § 626(b). According to these cases, Congress cannot have intended—and it would not "effectuate the purposes of" the ADEA, which expressly prohibits discrimination by labor unions—to allow unions to discriminate against their own members without facing liability for money damages. *See Tyrell v. City of Scranton*, 134 F. Supp. 2d 373, 386 (M.D. Penn. 2001); *EEOC v. Local 350, Plumbers & Pipefitters*, 842 F. Supp. 417, 422 (D. Nev. 1994); *Boieru v. Cuyohoga Cty. Library Union*, No. C86-1298, 1988 WL 106953, at *1 (N.D. Ohio May 27, 1988); *EEOC v. ALPA*, 489 F. Supp. 1003 (D. Minn. 1980) *rev'd on other grounds*, 661 F.2d 91 (8th Cir. 1981).

---

[1] For convenience, the Court will refer to this language as "the 'appropriate legal or equitable relief' language."

ALPA replies that plaintiffs, by relying on these cases, are advocating an overly expansive reading of the ADEA that the Seventh Circuit rejected in *Moskowitz v. Trustees of Purdue University*, 5 F.3d 279, 283 (7th Cir. 1993). However, that case is distinguishable, and its holding is not as broad as ALPA claims. In *Moskowitz*, the Seventh Circuit held that the "appropriate legal or equitable relief" language did not permit the award of consequential damages or other common law damages beyond the economic damages for lost wages prescribed by the FLSA. That conclusion clearly comports with the language and legislative history of the statute, which explicitly provides that "[a]mounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title [*i.e.*, the relevant sections of the FLSA]," 29 U.S.C.A. § 626. Congress not only incorporated §§ 216 and 217 by reference but it reproduced in section 626 words such as "wages" and "compensation." It is clear from the plain language of the ADEA that Congress intended to limit damages to lost or unpaid wages.

On the other hand, the ADEA does not explicitly import the requirement that a liable party be an "employer" in the same way; the word "employer" does not appear in § 626 (unlike the terms "wages" and "compensation"), and § 623(c) explicitly prohibits age discrimination by labor unions. If Congress intended to limit potentially liable parties under the ADEA to "employers," incongruently with § 623(c), it might at least have used the word in § 626, as the FLSA does in § 216. It is more reasonable to read the statute as providing that "ANY party [including labor unions] whose conduct is proscribed by the substantive provision[s] of the [ADEA] may be required to pay for the pecuniary injuries they cause," *Local 350, Plumbers & Pipefitters*, 842 F. Supp. at 422, than to read it to prohibit discrimination by labor unions without providing any meaningful remedies for it against them. Nor is that reading inconsistent with the

5

Seventh Circuit's holding that the liable party may only be required to pay economic damages for lost wages rather than other types of common law damages. *See* Karen L. Peck, *Union Liability Under the Age Discrimination in Employment Act*, 56 U. Chi. L. Rev. 1087, 1112-13 (1989) (arguing that unions are liable under ADEA but only for lost wages). It does not even require resorting to the "appropriate legal and equitable relief" language that the Seventh Circuit was interpreting in *Moskowitz*. The court in *Local 350, Plumbers & Pipefitters* held that the ADEA did not incorporate every FLSA provision wholesale, and FLSA's "employer" requirement simply was not incorporated into the ADEA. *See* 842 F. Supp. at 421-22. This Court agrees.

But even if plaintiffs were forced to rely on the "appropriate legal and equitable relief" language in § 626(b), the Court would agree that it supports their position. *Neuman*'s reasoning in reaching a contrary result is not persuasive. In *Neuman*, the court held that the "appropriate legal and equitable relief" language did not permit money damages against labor unions because it "was inserted into the ADEA by Congress as a means of overruling previous judicial interpretations of the FLSA which had held that injunctive relief was unavailable in private actions under the FLSA." *Neuman*, 1982 WL 313 at *3 (citing *Lorillard v. Pons*, 434 U.S. 575, 581 (1978)). Certainly, the United States Supreme Court stated in *Lorillard* that Congress intended to diverge from judicial interpretations of the FLSA that held that injunctive relief was unavailable, but it did not hold that this was the *only* purpose for inserting the "appropriate legal or equitable relief" language into the ADEA, nor would that interpretation be logical. Surely, if Congress inserted this language with only injunctive relief in mind, it would have had no need to include the word "legal."

Additionally, in *Neuman*, in response to the plaintiffs' argument that the similarity of the substantive provisions of Title VII and the ADEA support the position that the statutes provide similar remedies as against labor unions, the court placed importance on the fact that Title VII contains an express provision making labor unions liable for back pay, 42 U.S.C. 2000e-5(g), but the ADEA does not. *Neuman*, 1982 WL 313 at *3 n.1. Again, the court cited *Lorillard*, in which the Supreme Court declined to draw any conclusions about the remedies provided by the ADEA based on the similarity of its substantive provisions to those of Title VII. However, *Lorillard* also pointed out an important difference in the remedial structures of the two statutes: Title VII, unlike the ADEA, does not "authorize 'legal' relief in so many words"; under Title VII, the availability of back pay "is a matter of equitable discretion." *Lorillard*, 434 U.S. at 584. But the ADEA expressly authorizes "legal or equitable relief as may be appropriate to effectuate the purposes" of the statute. In the ADEA, unlike Title VII, Congress had no need to specifically authorize labor union liability for back pay or a similar remedy; the general provisions of § 626(b) accomplish the same purpose by authorizing "legal or equitable relief" under the general remedial structure of the FLSA, which allows plaintiffs to recover lost wages as money damages. It is a reasonable interpretation of the ADEA, in light of this difference from Title VII, that labor unions, which are prohibited from discriminating on the basis of age, are subject to the same penalties as employers if they violate the ADEA.

To hold otherwise is to hold that Congress enacted a statute that prohibits age discrimination by unions without providing any meaningful remedy. *Tyrrell*, 134 F. Supp. 2d at 386. As plaintiffs argue, the union is not in a position to provide certain equitable remedies such as reinstatement. Money damages are likely to be the only way to redress the union's violation

of the ADEA. The Court is not persuaded that Congress intended to exclude this remedy from the ADEA.

The fact that plaintiffs seek money damages against ALPA provides no basis for granting judgment against them on their ADEA claim.

### B. Legal Sufficiency of ADEA Claim Under *Twombly/Iqbal*

ALPA contends that plaintiffs fail to state a claim under the ADEA because they do not specifically allege that ALPA acted with discriminatory intent.

Plaintiffs have alleged that they are over 65; their union agreed to a policy that would require all instructors over the age of 65 to be terminated, although plaintiffs were performing their duties competently; and plaintiffs were subsequently replaced by younger instructors. This is more than sufficient to state a claim under the ADEA. *See Levin v. Madigan*, 697 F. Supp. 2d 958, 965-66 (N.D. Ill. 2010); *c.f. Serv. Employees Int'l Union, Local 73, ex rel. Condon v. Cty. of Cook*, No. 13 CV 2935, 2014 WL 793114, at *3 (N.D. Ill. Feb. 26, 2014). It is unclear what more ALPA would have plaintiffs allege, short of conclusive evidence such as an outright admission of age bias, but plaintiffs are not required to plead a discrimination claim in such detail. *See Levin*, 697 F. Supp. 2d at 965-66. As to this ground, ALPA's motion is denied.

### C. Reasonable Factor Other Than Age

ALPA contends that the UPA's requirement that all I/Es be line-qualified was a reasonable factor other than age ("RFOA"). *See* 29 U.S.C. § 623(f). ALPA may well be correct, but it may not raise this defense at this stage of the proceedings. *See Turner v. Jewel Food Stores, Inc.*, No. 05 C 5061, 2005 WL 3487788, at *3 (N.D. Ill. Dec. 21, 2005); *Ricciardi v. Elec. Data Sys. Corp.*, No. 03-CV-5285, 2005 WL 2782932, at *1 (E.D. Pa. Oct. 24, 2005).

The ADEA's exemption for actions based on RFOAs is an affirmative defense; the party raising it "must not only produce evidence raising the defense, but also persuade the factfinder of

its merit." *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 87, 95 (2008). A court may not grant a motion to dismiss or a motion for judgment on the pleadings on the basis of an affirmative defense unless the allegations of the complaint suffice to establish the defense. *See Jones v. Bock*, 549 U.S. 199, 215 (2007).

This Court cannot determine, based only on the allegations of plaintiffs' complaint, whether requiring I/Es to be line-qualified is a RFOA. The only undisputed fact in the pleadings bearing on that issue is that the requirement was United's pre-merger practice, but this Court is unwilling to hold that the I/E line-flying requirement is reasonable based only on the fact that it was United's longstanding practice, without the benefit of any evidence that might be developed in discovery to show that, for all its longevity, the practice was totally unreasonable. *See Turner*, 2005 WL 3487788, at *3; *Ricciardi*, 2005 WL 2782932, at *1.

Based only on the pleadings, the evidence developed in discovery is no more likely to show that United's line-flying requirement for I/Es is a reasonable factor other than age than it is to show that the requirement is entirely arbitrary. ALPA's motion is denied as to the ADEA claim.

## III. DUTY TO FAIRLY REPRESENT

### A. Statute of Limitations

ALPA contends that plaintiffs' claim that ALPA breached its duty to fairly represent them is barred by the statute of limitations. A six-month statute of limitations applies to DFR suits under the Railway Labor Act, which governs airlines' labor unions. *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1273 (7th Cir. 1985). When the DFR claim is based on the union's entering into a particular collective bargaining agreement, the claim accrues "when the contract is signed." *Id.* In this case, Letter of Agreement 18 was signed

on December 18, 2012. ALPA contends that the statute of limitations began to run on that date, although plaintiffs did not file this action until more than 15 months later.

Plaintiffs respond, citing *Frandsen v. Brotherhood of Railroad, Airline & Steamship Clerks, Freight Handlers, Express & Station Employees*, 782 F.2d 674, 681 (7th Cir. 1986), that the statute was tolled while they were pursuing internal union remedies. In their brief, plaintiffs describe this internal union process as follows:

> [P]laintiffs notified the union that they wanted to seek redress of their complaint. The union never responded before plaintiffs were terminated. Plaintiffs, therefore, had no way to know until their final termination date that the union was not going to do anything to help them. . . . [T]hey continued to believe that ALPA would represent their interests and fight to keep their jobs. This belief was not without foundation, since ALPA did work to change other provisions of the new CBA, to the benefit of former Continental employees, during 2013.

(Resp. at 6-7.) ALPA replies that plaintiffs' complaint contains no allegations of any internal union remedies pursued by plaintiffs and, in any case, internal union procedures only toll the statute of limitations if they are formal, not informal requests for help. *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 916 (7th Cir. 1999).

ALPA's grasp of the applicable substantive law is sound, but again it makes an argument that is inappropriate at this stage of the proceedings. Plaintiffs were not required to anticipate ALPA's affirmative defense in drafting their complaint. Unless it is clear on the face of the complaint that plaintiffs' DFR claim is barred by the statute of limitations, the claim must survive a motion for judgment on the pleadings. Stated differently, plaintiffs must have "admit[ted] all the ingredients of an impenetrable defense" to be vulnerable on statute of limitations grounds to a motion for judgment on the pleadings. *See Jovic v. L-3 Servs., Inc.*, No. 10 C 5197, 2014 WL 4748614, at *11 (N.D. Ill. Sept. 24, 2014) (citing *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)).

In this case, the complaint is entirely silent as to whether plaintiffs pursued formal internal union procedures that might have tolled the statute. It is at least possible that, as plaintiffs' response might be read to suggest, they made a formal complaint to their union and the union gave some response that was "sufficiently vague" to give plaintiffs false hope that ALPA might take some further action on their behalf. *See Konen v. Int'l Bhd. of Teamsters*, 255 F.3d 402, 406 (7th Cir. 2001), *Scott v. Lear Corp.*, No. 2:14-CV-107, 2014 WL 5597276, at *8 (N.D. Ind. Nov. 4, 2014).[2]

Plaintiffs have not pleaded themselves out of court because the allegations of the complaint do not plainly reveal that their claim is barred by the statute of limitations. ALPA's statute of limitations defense must fail at this early stage of the proceedings.

### B. Legal Sufficiency of DFR claim

ALPA claims that plaintiffs do not plausibly allege that ALPA breached its duty to fairly represent them. ALPA states that courts must evaluate a union's performance under a "highly deferential" standard that gives unions the "wide latitude" they need "for the effective performance of their bargaining responsibilities" *ALPA v. O'Neill*, 499 U.S. 65, 66 (1991), and plaintiffs have not alleged any egregious failure that might meet this deferential standard.

As ALPA admits, a breach of the DFR may be based on discrimination. *See Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971). Plaintiffs respond that they have adequately alleged that the union discriminated against them on the basis of age. ALPA replies, as it argued with respect to plaintiffs' ADEA

---

[2] Importantly, if an applicable internal union time limit for taking action expired, then the plaintiffs were on notice that the union would take no further action, and the statute of limitations began to run. *See Christiansen*, 178 F.3d at 914 (citing *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299 (7th Cir. 1983)). ALPA has pointed to no such time limit in this case.

11

claim, that plaintiffs have alleged no facts to support the claim that there was any discriminatory intent or improper motive underlying its actions.

The Seventh Circuit has given complaints alleging breach of the duty of fair representation based on discrimination a liberal construction, as federal notice-pleading standards require. *Zapp v. United Transp. Union*, 727 F.2d 617, 627 (7th Cir. 1984); *Waters v. Wis. Steel Works of Int'l Harvester Co.*, 427 F.2d 476, 489 (7th Cir. 1970). Further, in the context of employment discrimination claims under Title VII, the Seventh Circuit allows plaintiffs to plead discrimination claims quite generally because there is unlikely to be any "smoking gun" evidence of discriminatory intent; for example, a defendant is not likely to have admitted his discriminatory intent to the plaintiff outright. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008); *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781-82 (7th Cir. 2007) (citing cases). It is appropriate at the pleading stage to give plaintiffs similar leeway in evaluating their DFR claim based on discrimination.

It is certainly a logical inference based on the allegations of the complaint that ALPA discriminated on the basis of age. To require plaintiffs to provide more facts would be to require them to prove their claim in the complaint. At this stage, they have met their burden of stating a plausible claim of a breach of the duty of fair representation based on discrimination. Plaintiffs' DFR claim survives ALPA's motion.

## IV.   STATE LAW CLAIMS

ALPA contends that plaintiffs' state law claims are preempted. Plaintiffs claim in Count II that, by "placing the interests of its younger members ahead of its older members . . . in negotiating the [UPA] with United," ALPA breached its obligations to plaintiffs under its own constitution and by-laws, which represent a direct contract with plaintiffs enforceable under state law. (Compl. ¶ 36-37.) In Count IV, plaintiffs claim that ALPA tortiously interfered with

plaintiffs' business relationship with their employer by, while "purport[ing] to represent the interests of Plaintiffs in negotiations with United[,] encourag[ing] United to agree to terminate instructors at age 65." (*Id*. ¶ 49-50.)

These claims essentially duplicate plaintiffs' duty of fair representation claim, *i.e.*, "the underlying dispute draws its basic character from ALPA's alleged violation of federal law, and . . . the state law claims, in both substance and relief, are identical to the federal claim." *Peterson v. ALPA*, 759 F.2d 1161, 1170 (4th Cir. 1985) ("[S]tate (and federal) courts [applying state law] generally may not adjudicate claims based on conduct that is protected or prohibited by federal labor law, or arguably so.") (citing *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244 (1959)); *see Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 59-60 (2d Cir. 2009); *Adkins v. Mireles*, 526 F.3d 531, 540 (9th Cir. 2008); *Griffin v. ALPA*, No. 93 C 719, 1993 WL 348568, at *6-9 (N.D. Ill. Sept. 3, 1993) *aff'd,* 32 F.3d 1079 (7th Cir. 1994). These state-law claims are preempted because they arise out of ALPA's collective bargaining activity, and "the imposition of additional state liability on the defendants for conduct during collective bargaining negotiations would upset the balance of power established by the [Railway Labor Act] and frustrate effective implementation of the [Act's] processes." *Lindsay*, 581 F.3d at 59-60 (internal citations omitted).

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendant ALPA's motion for judgment on the pleadings. The motion is granted as to Counts II and IV. The motion is denied as to Counts I and III.

**SO ORDERED.**

**ENTERED: July 9, 2015**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**