**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DOUGLAS BADER, CHARLES DOYLE, and RALPH J. RINA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 14 C 6415 |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | ) ) ) | Judge Jorge L. Alonso |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Douglas Bader, Charles Doyle, and Ralph Rina have brought this action against their labor union, Defendant Air Line Pilots Association, International ("ALPA"). Plaintiffs bring age discrimination claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and breach of duty of fair representation claims under the under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.* Before the court is ALPA's motion for summary judgment and Plaintiffs' partial motion for summary judgment as to liability.[1] For the reasons set forth below, ALPA's motion for summary judgment [73] is granted, and Plaintiffs' partial motion for summary judgment [114] is denied.

---

[1] Plaintiffs do not specify which claims they intended to cover in their partial motion for summary judgment. The court construes the motion as seeking summary judgment on all remaining claims.

**BACKGROUND**

Prior to 2010, Plaintiffs were Pilot Instructor/Evaluators ("I/Es") at Continental Airlines ("Continental"). Federal law prevents anyone over the age of 65 from serving as a pilot in most commercial operations. While working for Continental, Plaintiffs were unable to fly the line[2] since they were over 65 years old, but Plaintiffs were able to work for Continental as Non-Line Qualified Flight Instructors ("NLQFIs"). In 2010, United Airlines, Inc. ("United") entered into a merger with Continental. ALPA is the labor organization that represented Plaintiffs and other I/Es at the time of the merger. After the merger, United and ALPA negotiated a new collective bargaining agreement referred to as the United Pilot Agreement ("UPA"), which became effective December 18, 2012. The UPA included a qualification for the I/E position that United had in place since at least 1989 ("United Policy"). The United Policy required that all I/Es fly the line at least 30 days a year. After the merger, Plaintiffs could not serve as I/Es for United because they were unable to fly the line.

In a Letter of Agreement, dated December 18, 2012 ("LOA 18"), which was made a part of the UPA, United and ALPA agreed to a transition period of twelve months after the effective date of the UPA that allowed NLQFIs who exceeded the statutory age limit for pilots to continue to work in the I/E position. The transitional period ran from December 2012 through December 2013. During the transitional period, United also utilized Continental's Advanced Qualification Program ("AQP").[3] Under the UPA, after the transitional period, NLQFIs were treated like any other pilots and were removed from the pilot seniority list when they reached the statutory age limit. In June 2013, Plaintiffs delivered a letter ("June 2013 Letter") to the Continental ALPA

---

[2] The phrase "flying the line" refers to the piloting of scheduled passenger flights in revenue service.
[3] Under an AQP an airline can create a customized pilot training and evaluation program, which must be reviewed and approved by the Federal Aviation Administration ("FAA"). As part of the merger United adopted Continental's AQP subject to a transition plan. The AQP was eventually amended to bring it in compliance with United's policy in regard to NLQFI's.

Master Executive Council ("Council") requesting that their seniority be restored and that their retirement date be rescinded. The Council responded that it did not have unilateral authority to strike or modify provisions of the UPA. Plaintiffs contend that they did not understand the Council's response at that time to be a final rejection of Plaintiffs' requests and so delayed in pursuing certain claims. Plaintiffs ultimately all retired near the end of the transitional period.

On April 7, 2014, Plaintiffs filed the instant action in the United States District Court for the District of Columbia and included in their complaint ADEA discrimination claims (Count I), breach of contract claims (Count II), breach of the duty of fair representation ("DFR") claims brought under the RLA (Count III), and tortious interference with a business expectancy claims (Count IV). On August 8, 2014, this action was transferred to this district. On November 14, 2014, ALPA moved for a judgment on the pleadings and on January 16, 2015, this case was transferred to the undersigned judge. On July 9, 2015, the court granted the motion for judgment on the pleadings in regard to the state law claims in Counts II and IV, and denied the motion in regard to the ADEA claims and DFR claims in Counts I and III. ALPA has filed a motion for summary judgment on the remaining claims and Plaintiffs have filed a partial motion for summary judgment as to liability.[4]

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See*

---

[4] This action is related to *Bader v. United Airlines, Inc.* (14 C 2589).

*Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681–82 (7th Cir. 2014). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). It is well settled that at the summary-judgment stage, the court does not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts; those are jury functions. *See Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

### I.  Local Rule 56.1

ALPA asserts that Plaintiffs have repeatedly failed to comply with Local Rule 56.1.[5] ALPA is correct that Plaintiffs have failed to comply with Local Rule 56.1 by neglecting to cite to the record to support facts and by presenting citations that do not support the asserted facts.

---

[5] The court notes that although Plaintiffs filed their statement of material fact s (Dkt. No. 104-3), that filing was withdrawn from the docket.  Plaintiffs subsequently filed a new memorandum in opposition to ALPA's motion for summary judgment and in support of their partial motion for summary judgment, but Plaintiffs failed to refile their statement of material facts.  ALPA nevertheless responded to Plaintiffs' prior filing, and in the interest of fairness, the court considers it.  Plaintiffs are directed to file their statements of material facts on the docket and in accordance with the confidentiality order.

(Plaintiffs Statement of Undisputed Material Facts in Support of their Motion for Partial Summary Judgment "PSOF" Dkt. No. 104-3); (Plaintiffs Statement of Undisputed Material Facts in Opposition to United's Motion for Summary Judgment "PSOF OP" Dkt. No. 104-3). A review of the parties' filings, however, shows that neither side has followed Local Rule 56.1. For example, instead of admitting or denying facts as envisioned by Local Rule 56.1, ALPA provides an endless series of objections, arguments, and partial admissions. ALPA continually objects to facts as irrelevant even though they fall within the broad scope of relevancy and ALPA fails to even proffer an explanation as to why the facts would be irrelevant. (R PSOF OP ¶ 1-13, 15-22); (R PSOF ¶¶ 6-21). ALPA also objects to facts as ambiguous instead of simply admitting or denying facts. (R PSOF OP ¶¶ 5-7, 13, 15); (R PSOF ¶ 18). Instead of clearly admitting or denying facts, ALPA also continually admits facts "subject to" objections and even denies facts "subject to" objections. (R PSOF OP ¶¶ 1-7, 9-12, 15-20, 22, 24); (R PSOF ¶¶ 1, 6-21). ALPA also accuses Plaintiffs of misstating the cited evidence, but ALPA fails at times to explain how the facts are misstated. (R PSOF OP ¶ 6); (R PSOF ¶ 10).

ALPA also fails to cite to the record or evidence when necessary to support objections. For example, in response to Plaintiffs' statement of material fact Paragraph 10 in support of their partial motion for summary judgment, ALPA responds: "ALPA objects to this paragraph because it is irrelevant, lacks foundation, misstates evidence and its argumentative. Subject to these objections, ALPA admits the Fred Abbot testified . . .." (R PSOF ¶ 10). ALPA does not explain why the facts would be irrelevant, or why they misstate the evidence, or cite to the record or any evidence. Nor does ALPA even specify what it admits that Abbot testified, providing only a four-dot ellipse at the end of its response. In addition, although ALPA complains that certain paragraphs of Plaintiffs' statements of facts are argumentative, (R PSOF ¶ 10), ALPA

provides its own argumentative responses.  For example, in Paragraph 14 of Plaintiffs' statement

of material facts in support of their partial motion for summary judgment, Plaintiffs assert that

internal ALPA emails consistently referred to "age 65 instructors."  (PSOF ¶ 14).  Instead of

simply admitting that fact, ALPA first objects, stating that facts are irrelevant.  Such facts,

however, are not irrelevant in this ADEA case.  ALPA then indicates that "[s]ubject to [those]

objections" it denies the facts and argues that the "[r]eferences to 'over 65' pilots were shorthand

for pilots who had reached the federally mandated retirement age."  (PSOF ¶ 14).  Such evasive

responses defeat the purpose of Local Rule 56.1.  ALPA's lengthy and often unwarranted

objections to virtually all of Plaintiffs' facts undermine the utility of Local Rule 56.1 and the

clarity in the record that the rule is intended to promote.  *See Stevo v. Frasor*, 662 F.3d 880, 886-

87 (7th Cir. 2011) (explaining that "[b]ecause of the high volume of summary judgment motions

and the benefits of clear presentation of relevant evidence and law, [the Court has] repeatedly

held that district judges are entitled to insist on strict compliance with local rules designed to

promote the clarity of summary judgment filings").  Both sides have thus substantially failed to

comply with Local Rule 56.1.


II.  ADEA Claims (Count I)

ALPA and Plaintiffs move for summary judgment on the ADEA claims.    The ADEA

protects individuals who are over 40 years old from discrimination.  *See Formella v. Brennan*,

817 F.3d 503, 514 (7th Cir. 2016) (stating that "[t]he ADEA prohibits employment

discrimination against people over 40 years old").   The ADEA provides in relevant part that "[i]t

shall be unlawful for an employer-- . . . to discharge any individual or otherwise discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ."  29 U.S.C. § 623(a)(1).

In an ADEA case, a plaintiff bears the burden of showing that "age was the but-for cause of the challenged adverse employment action."  *Carson v. Lake Cty., Indiana*, 865 F.3d 526, 532 (7th Cir. 2017) (quoting *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 180 (2009)) (internal quotations omitted) (explaining that "[i]n this respect, the ADEA is narrower than Title VII of the Civil Rights Act of 1964, as Title VII also protects against mixed-motive discrimination"); *see also Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 776 (7th Cir. 2013) (stating that "[t]o establish an ADEA violation, 'an employee must show that age actually motivated the adverse employment action'" and that "'[p]ut differently, age must have played a role in the employer's decision-making process and had a determinative influence on the outcome'") (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010)); *Mirocha v. Palos Cmty. Hosp.*, 240 F. Supp. 3d 822, 837 (N.D. Ill. 2017) (explaining that "[a] plaintiff employee may prevail on an age discrimination claim if he can show that his termination would not have occurred 'but for' his employer's age-based discriminatory motive"); *Kawczynski v. F.E. Moran, Inc.*, 238 F. Supp. 3d 1076, 1083 (N.D. Ill. 2017) (stating that "at summary judgment, a plaintiff must also 'show evidence that could support a jury verdict that age was a but-for cause of the employment action'")(quoting *Roberts v. Columbia Coll. Chicago*, 821 F.3d 855, 865 (7th Cir. 2016)).

In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit held that a plaintiff who is facing a defendant's motion for summary judgment in an employment discrimination case is not required to proceed under the traditional direct method of proof or the indirect *McDonnell Douglas* burden-shifting method of proof that were utilized by the courts in

the past. *Ortiz*, 834 F.3d at 763–66; *Carson v. Lake Cty., Indiana*, 865 F.3d 526, 532 (7th Cir. 2017) (applying *Ortiz* in ADEA case). The Seventh Circuit stated that the ultimate inquiry must be "simply whether" when considering the evidence "as a whole," such evidence "would permit a reasonable factfinder to conclude that the plaintiff's" protected characteristic "caused the . . . discharge or other adverse employment action." *Ortiz*, 834 F.3d at 764–65 (stating that "[t]he sole question that matters" is "[w]hether a reasonable juror could conclude that" the plaintiff "would have kept his job if he" was outside the protected class, "and everything else had remained the same"). The Court in *Ortiz*, did not however, do away with the *McDonnell Douglas* burden-shifting method. *Id.* at 766 (stating that the "decision does not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand"); *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (stating that *Ortiz* "did not alter" the *McDonnell Douglas* burden-shifting method); *Kawczynski*, 238 F. Supp. 3d at 1083 (stating that *Ortiz* "did not change the burden shifting method under" *McDonnell Douglas*). Instead, the *McDonnell Douglas* burden-shifting method remains "'a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases.'" *Kawczynski*, 238 F. Supp. 3d at 1083 (quoting *David*, 846 F.3d at, 224); *Nance v. NBCUniversal Media, LLC*, No. 16-CV-11635, 2018 WL 1762440, at *2 (N.D. Ill. April 12, 2018) (stating that "*Ortiz* made clear that its holding did not alter the so-called *McDonnell Douglas* method of establishing a prima facie case of discrimination . . ., which remains a valid but nonexclusive method of doing so").

ALPA argues that since there is no direct evidence of discrimination, Plaintiffs are required to utilize the *McDonnell-Douglas* burden-shifting method. (ALPA Memorandum in Support of its Motion for Summary Judgment "A. SJ" Dkt. No. 74 at 6 n.3). As indicated above,

however, *Ortiz* made clear that a plaintiff is not required to use the burden-shifting method. The

court notes that even before *Ortiz*, Plaintiffs would not have been required to proceed under the

burden-shifting method and could have chosen to proceed under the direct method of proof.[6]

Plaintiffs argue that they can prevail under the general *Ortiz* standard and under the *McDonnell-*

*Douglas* burden-shifting method. (Plaintiffs' Memorandum of Law in Opposition to

Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Partial Motion for

Summary Judgment "P. Opp./SJ" Dkt. No. 114 at 6, 8).


### A. Connection to Safety

Plaintiffs argue that requiring I/Es to fly the line does not improve operational safety.

Plaintiffs overstate what ALPA must show as justification its actions. Plaintiffs contend that if

NLQFIs presented legitimate safety concerns, since Plaintiffs were allowed to work for 12

months after the UPA became effective, ALPA would have been "complicit in allowing

unqualified instructors/evaluators to perform the critical function of training and evaluating

pilots flying revenue flights." (P. Opp./SJ at 2). Plaintiffs also argue that ALPA lacks sufficient

evidence to show that "flying the line is somehow a critical component of performing the

functions of an instructor/evaluator." (P. Opp./SJ at 21). ALPA has not, however, claimed that

the United Policy was "critical" to ensuring safety. ALPA has consistently explained that the

---

[6] The direct method of proof which allows the introduction of direct and circumstantial evidence has also
sometimes been referred to as the direct-evidence method. *See, e.g., Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598,
603 (7th Cir. 2012); *Hutt v. AbbVie Prod. LLC*, 757 F.3d 687, 691 (7th Cir. 2014) (explaining that "[a] plaintiff may
prove employment discrimination under the ADEA . . . using either the direct method or indirect method"").
Plaintiffs argue that they are not required to proceed under the *McDonnell Douglas* burden shifting method because
they present "direct evidence" of discrimination. (P. Opp/SJ at 6). Direct evidence is "[e]vidence that is based on
personal knowledge or observation and that if true, proves a fact, without inference or presumption." Black's Law
Dictionary 577 (7th ed. 1999). Plaintiffs point to no such evidence in their filings.

United Policy was something that deeply engrained in the ethos of United's training department since at least 1989. (ALPA Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment "ASOF" Dkt. No. 75 ¶6). ALPA bears no burden of showing that flying the line is a "critical component" of the training or that United's policy was necessary to adequately protect the safety of passengers. The mere fact that ALPA may have believed that following the United Policy would improve safety does not mean that failing to follow such a policy unreasonably placed passengers at risk or that United's operations during the twelve month grace-period were unsafe. If ALPA believed that flying the line would provide better training to I/Es and agreed to the UPA for reasons other than age, ALPA did not violate the ADEA. The focus of this court must remain on the claims at issue in this case, which involve whether there was unlawful discrimination based upon Plaintiffs' age, not which policy promotes better operational safety.

## B. Correlation with Age

Plaintiffs argue that the longstanding United Policy is unlawful on its face because it is connected to an employee's age. In *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), the Supreme Court was presented with an ADEA discrimination claim in an action where the plaintiff asserted that he was fired to prevent his pension benefits from vesting. 507 U.S. at 606, 609. The court in *Hazen* held that a policy that may correlate with age is not necessarily a violation of the ADEA. *Id.* at 611 (stating that "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears" and that "[t]his is true even if the motivating factor is correlated with age"); *see also Teufel v. N. Tr. Co.*, 887 F.3d 799, 803 (7th Cir. 2018) (stating that "[b]ecause salary generally

rises with age, and an extra year of credited service goes with an extra year of age, the plan's criteria are correlated with age—but both *Kentucky Retirement Systems* and *Hazen Paper* hold that the[] pension criteria differ from age discrimination"); *Maglieri v. Costco Wholesale Corp.*, No. 16 CV 7033, 2018 WL 1316735, at *4 (N.D. Ill. March 14, 2018) (citing *Hazen* for proposition that "'[t]he ADEA prohibits employers from relying on age as a proxy for an employee's [work-related] characteristics, such as productivity,'" but that "it does not bar employers from focusing directly on work-related characteristics themselves") (internal quotations omitted) (quoting in part *Hazen*, 507 U.S. at 611). The Court in *Hazen* concluded that although an employee's pension status might correlate to the employee's age, pension status and age are not the same, and that discrimination based on pension status was not the same as discrimination based on age. 507 U.S. at 610 (stating that "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based'").

In the instant action, the United Policy also correlates to some extent with age because of the limitations provided under federal law for flying the line. Discrimination based on the inability to fly the line, however, is not the same as discrimination based on age. It is true that unlike in *Hazen*, because of federal law, the United Policy is indirectly connected to a definitive age requirement. However, flying the line is indirectly tied to a variety of other factors such as the requisite prior service and training and medical status, as well as age. There are even subcategories with the medical status category that are considered including vision, hearing, mental health, and neurologic health. Age is one of many areas that are considered in determining whether someone can fly the line. The Court in Hazen indicated that the ADA merely "requires the employer to ignore an employee's age. . . ." *Id.* The undisputed facts show

that since 1989 United has held a belief that flying the line has training value and, as in *Hazen*,

United can "take into account" whether an I/E has the experience of recently piloting

commercial flights "while ignoring" the age of the I/E.  *Id.* at 611.[7]   The Court in *Hazen* made

clear that "[i]n a disparate treatment case, liability depends on whether the protected trait (under

the ADEA, age) actually motivated the employer's decision."  *Id.* at 610.  The relevant inquiry in

this case is thus whether ALPA was honest in regard to its given reason for its decision to

include the United Policy in the UPA or whether it was a pretext for unlawful discrimination.

ALPA may believe the best trained I/Es are those that can fly the line.  Plaintiffs cannot ask the

trier of fact at trial to speculate that ALPA's expressed belief masked a desired animus to

discriminate against I/Es based on age or to discriminate against I/Es based on the myriad of

other factors associated with being able to fly the line.

   To the extent that Plaintiffs believe that they should be allowed to fly commercial line

flights, their dispute is not with ALPA.  Rather, their dispute is with the federal law that limits

their ability to fly the line based on age.  Plaintiffs contend that they were subjected to an

arbitrary age limit but it was federal law, not ALPA that subjected Plaintiffs to an age limit.

Nor is there any evidence that United would have taken steps to prevent Plaintiffs from serving

---

[7] Plaintiffs also cite to *Johnson v. State of N.Y.*, 49 F.3d 75 (2d Cir. 1995) in support of their arguments.  *Johnson*, is
not controlling precedent and is not consistent with the Seventh Circuit's repeated admonitions that this court does
not sit as a superpersonnel department telling companies how to run their business.  In fact, the dissenting opinion in
*Johnson*  pointed to *Hazen* and its admonition that "[t]he ADEA is concerned with the role that age plays in the
employer's decision to terminate."  *Id.* at 81.  The dissenting opinion concluded that "[t]he reason" that the plaintiff
lost the status necessary for employment "is immaterial, since it played no part in the actual decision to terminate his
employment."  *Id.*  Similarly, in the instant action, the evidence indicates that United terminated Plaintiffs'
employment because they lost their status necessary for employment.  Absent facts indicating a hidden motive on
the part of  ALPA, for a disparate treatment claim,  it is immaterial whether Plaintiffs indirectly lost their status due
to age, medical reasons, or lack of training.

as I/Es if federal law had allowed them to fly the line.[8]  Plaintiffs claim that they were "forced

into retirement," but no such retirement was forced upon Plaintiffs by ALPA.  (P. Opp./SJ at 2).

To the extent that Plaintiffs were unable to work for United as I/E's, it was based on their

inability to fly the line, not on their age.  Any younger I/Es who had a medical condition that

precluded them from flying the line were likewise unable to work for United.  Thus, the mere

fact that the United Policy is indirectly connected to age does not mean that the United Policy is

unlawful on its face.


C.  ALPA's Involvement in Adoption of United Policy in UPA

Plaintiffs contend it was ALPA that was responsible for the adoption of United Policy in

the UPA and that United did not want to adopt the United Policy.  Plaintiffs claim that it was

ALPA who wanted to get rid of the I/Es over the age of 65 and that United actually wanted to

keep them, but caved into ALPA's demand.   It would appear strange if United desired to forego

its own longstanding policy and that it needed to be persuaded by ALPA, Plaintiffs'

representative, to adopt the United Policy.  Plaintiffs fail, however, to present sufficient

admissible evidence to support such a conclusion and a review of the evidence does not indicate

suspicious conduct on the part of ALPA.


1.  Statements Overheard by Abbott

Plaintiffs contend in Paragraph 8 of their Statement of Facts in Opposition to United's

Motion for Summary Judgment that "United ALPA pilots pre-merger were overheard saying that

---

[8]    The FAA age limitation for pilots is not written in stone and can change.  In 2007, the age limit was raised from
60 to 65 in the Fair Treatment for Experienced Pilots Act of 2007.  *Emory v. United Air Lines, Inc.*, 720 F.3d 915,
917 (D.C. Cir. 2013).

they wanted to eliminate the provision for non-line qualified pilots that was in the Continental collective bargaining agreement." (PSOF OP ¶ 8). Plaintiffs' assertion is based on Frederick Abbott's deposition testimony that he heard such statements from "line pilots and other persons [he] might have run into." (PSOF OP ¶ 8); (Abbott Dep. at 63). Abbott admitted that no such statements were made during the negotiations of the UPA and that he could not recall even one name of the unidentified persons who he might have run into and made such statements to him. (Abbott Dep. at 63). Also absent from the record is any detail as to when the statements were made or what exactly was communicated to Abbott. Such evidence would not be admissible at trial and is not properly considered at the summary judgment stage. *See Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (indicating that the plaintiff can only rely on admissible evidence at the summary judgment stage).

### 2. Privileged Luby Communication

Plaintiffs also present an affidavit from John Perry in support of their assertion that ALPA had been interested in eliminating older I/Es. (PSOF ¶ 13). Perry indicates he has no personal knowledge of ALPA's intentions, but he has attached an apparently privileged email sent to Tom Donaldson by ALPA's counsel Art Luby (P. Ex. 41). There is no date on the email, and Perry does not even specify the year that he believes that the email was sent to Donaldson. Perry merely indicates that he believes that Luby represented ALPA in 2007 and up to 2013. (P Ex. 41). The email is thus inadmissible based on hearsay and lacks a proper foundation, and is not properly relied upon at the summary judgment stage.

The subject matter in the email is also not the same that is presented in the instant action. In the email, Luby discussed the decision by the FAA that raised the age for piloting commercial

flights from 60 to 65 and addressed whether to impose limitations on instructors who might become requalified based on the new law. (P. Ex. 41). In the email, Luby counseled ALPA not to place any restrictions on I/Es and the record indicates that ALPA followed Luby's advice. Such evidence does not indicate an unlawful animus on the part of ALPA.

### 3. Initial Proposals By United Negotiators and United's Concession to ALPA's Demands

Plaintiffs also claim that United "negotiators initially proposed keeping the Continental practice of no age limit for instructor/evaluators." (PSOF ¶ 9). In support of that statement Plaintiffs cite only to Plaintiffs' Exhibit 38. As ALPA correctly points out, Plaintiffs' Exhibit 38 does not mention initial proposals of United negotiators or indicate that they proposed that NLQFIs be allowed to work under the UPA. (P. Ex. 38); (R PSOF ¶ 9). Plaintiffs also contend that United ultimately conceded to ALPA's demand that the United Policy be included in UPA in exchange for concessions from ALPA. (PSOF ¶ 11). The only evidence cited by Plaintiffs to support their claim is Plaintiffs' Exhibit 39. A review of Exhibit 39 reveals no such facts that would support Plaintiffs claim. In fact, there are statements in Exhibit 39 that indicate that the parties had already agreed at a prior juncture that the United Policy would be included in the UPA. (P. Ex. 39). Plaintiffs' allegations as to such intrigue on the part of ALPA are nothing more than unsupported speculation, which is not sufficient to carry the day at the summary judgment stage. *Grant*, 870 F.3d at 568.

### 4. Statements Made by Maddox and Klumb

Plaintiffs contend that a former Continental official Troy Maddox told Rina "that the ALPA people from United are adamant that nobody over age 65 be on the property and that he

15

would have his seniority stripped from him and forced to retire in 12 months." (PSOF OP ¶ 8). Plaintiffs also contend that ALPA representative Bob Klumb told Bader "that United ALPA was adamant that nobody over age 65 remain on the seniority list or working at United." (PSOF OP ¶ 8). Even if Plaintiffs were able to convince a trier of fact to believe that such statements were made, the statements only make clear that it was the ALPA representatives connected to United that were promoting the United Policy. It was those same ALPA representatives connected to United and its longstanding policy that had supported the policy before the merger. The alleged statements by Maddox and Klumb also fail to identify the sources of the information and are inadmissible hearsay. *Grant*, 870 F.3d at 568. Thus, Plaintiffs have failed to point to sufficient evidence regarding ALPA involvement in the adoption of the United Policy in the UPA. ALPA represented all I/Es, not just the three Plaintiffs, and even though the United Policy was not beneficial to Plaintiffs, ALPA could have honestly believed that it promoted the general welfare of its members.

### D. References to Age in Emails

Plaintiffs contend that United and ALPA representatives made references to Plaintiffs' age in internal emails, which Plaintiffs argue shows an animus against Plaintiffs because of their age. (P. Opp./SJ at 21). Plaintiffs incorrectly assert that the emails were "internal communications during the negotiation period." (P. Opp./SJ at 21). In this case, Plaintiffs assert that ALPA discriminated against them when ALPA agreed to include the United Policy in the UPA and the UPA became effective in December 2012. The emails identified by Plaintiffs do not involve discussions during the negotiation of the UPA. Instead, they involve the post-merger

implementation of the UPA in 2013 and thus are not evidence of ALPA's intentions during the negotiations of the UPA.

Even if the emails were from the relevant time period, a close look of the references to age in the context of the statements in the messages does not indicate any animus based on age. While there are references in the emails to I/Es over the age of 65, the references to age are factual statements that are not accompanied by any derogatory statements or other facts that would suggest an animus against older I/Es. For example in one email, the sender discusses treatment of "existing I/E's who are over age 65." (P. Ex. 42: UAL006218).[9] The parties discuss in the emails matters that included how I/Es over the age of 65 could be impacted by UPA. In another email there is a statement by a representative that "[s]ome of the guys in [his] base are concerned that they, (over 65), will be ineligible for the early out blocking an active Pilot and also utilizing Jumpseat privileges as an inactive Pilot also bumping and active Pilot." (P. Ex. 42 at ALPA0004149). A discussion then follows concerning the issue at hand regarding such employees. In another email, the parties discuss whether "LOA 18 allow[ed] the three>65 to stay at the IAH training center until the 12-months period [was] up." (P. Ex. 42 at UAL006231). Plaintiffs point to no sinister statements in the emails or other facts that would suggest an unlawful motive on the part of United or ALPA.

It is also apparent that the references to age in the emails are between individuals who are well versed in the issues and reflect the significance of being over the age of 65 and its connection to flying the line. It is clear that the references to "65" are references to the age limit under federal law for flying the line. The mere fact that age is referenced does not alone indicate any animus based on age. The fact that the emails consistently reference the age of 65 shows the connection to the Federal Aviation Administration ("FAA") age regulation, and there is even a

---

[9] Plaintiffs' Exhibit 42 in this case is the same as Plaintiffs' Exhibit 15 in case number 14 C 2589.

specific reference in the emails to the "FAA mandatory retirement age." (P. Ex. 42 at ALPA0004981). Finally, although Plaintiffs claim that the emails refer to "old guys," a review of the many pages of emails in the exhibit shows that there is only one reference to "old guys." (P. Ex. 42 at ALPA0004088). Although the reference could be considered disrespectful or insensitive, it is just one phrase among many respectful references in the emails to the I/Es "over age 65," the I/Es "over 65," the "over 65 guys," the "over 65'ers," the "over 65 Pilots," and the "over 65 folks." (P. Ex. 42). Thus, the emails pointed to by Plaintiffs fail to support their age discrimination claims because they are not from or about the relevant time period and, even if they were, they fail to indicate any unlawful animus based on age.

    E.  ALPA Report to Congress

    Plaintiffs contend that ALPA itself has been critical of the United Policy in a report to Congress and has been critical of the United training program that allowed for learning mistakes to be made in the cockpit of revenue flights. (P. Opp./SJ at 2). The evidence cited by Plaintiffs in support, however, does not match up with Plaintiffs' argument. Plaintiffs cite to a report filed by ALPA to Congress in November 2011 ("ALPA Report"). (P. Opp./SJ at 2); (PSOF OP ¶ 6); (P. Ex. 14). Plaintiffs cite to page 8, but it is not clear whether they are referencing page 8 of Plaintiffs' Exhibit 14 or page 8 of the ALPA Report. (PSOF OP ¶ 6). Neither page contains facts to support Plaintiffs' statement. Page 8 of Plaintiffs' Exhibit 14 does not involve learning mistakes made in the cockpit. (P. Ex. 14 at 8). Page 8 of the ALPA Report does address mistakes that occur in the cockpit of revenue flights. (P. Ex. 14 at 14). ALPA is critical of certain aspects of United's training of pilots, not training of I/Es. (P. Ex. 14 at 14). In addition, although ALPA criticizes United for allowing "learning (and mistake making) to occur in the

cockpit on revenue flights," ALPA did not conclude that all training should be performed in a simulator as Plaintiffs suggest. ALPA indicated that the potential mistakes during revenue flights were possible because the pilots were not given an opportunity ahead of time to review the quick reference handbook before the training on the flights. (P. Ex. 14 at 13-14). It was the lack of an ability to adequately prepare before the training sessions that ALPA concluded cause potential problems. (P. Ex. 14 at 13-14). The report did not conclude, as Plaintiffs suggest that no training should be conducted on commercial flights. In regard to the ALPA Report's reference to the use of simulators, neither United nor ALPA has ever disputed the importance of training in simulators. The United Policy merely adds the flying the line requirement to the training regimen. Thus, Plaintiffs have failed to show that ALPA is acting in this case in a manner inconsistent with the ALPA Report.

### F. Comparator

Plaintiffs also fail to point to any comparator outside the protected class who was treated more favorably than them. The only individual that Plaintiffs point to in response to ALPA's motion for summary judgment is Tom Howard. (PSOF OP ¶ 21). Plaintiffs contend that Howard was a younger I/E who lost his medical certificate and could not fly the line. (PSOF OP ¶ 21). Plaintiffs claim that Howard was given a 30-month grace period before he had to retire at age 65 and that he was thus given a longer grace period than Plaintiffs.[10] (PSOF OP ¶ 21). Plaintiffs, however, cite no admissible evidence to support such a fact. (PSOF OP ¶ 21). Plaintiffs cite only to page 259 and 260 of the United Exhibit that is Rina's deposition transcript,

---

[10] The court notes that in 14 C 2589 although United's filings are somewhat unclear, United appears to indicate that Howard received only a 12-month grace period. (14 C 2589: Dkt. No. 120 ¶ 14); (14 C 2589: Dkt. No. 117 at 21, 21 n.17 ).

but the transcript is only 253 pages long.  (PSOF OP ¶ 21);  (U. Ex. 111).  In addition, there is no reliable foundation indicating how Rina learned about Howard.  Thus, Paragraph 21 is stricken for failure to comply with Local Rule 56.1.

Even if Plaintiffs had pointed to admissible evidence to support Paragraph 21, the comparison made by Plaintiffs to Howard does not indicate an unlawful disparate treatment.  After the merger and the effective date of the UPA, Plaintiffs were not seeking a longer grace period before their retirement.  In the June 2013 Letter Plaintiffs asked that their seniority be restored and the mandatory retirement be rescinded.  (P. Ex. 33); (Doyle Dep. Ex. 9, 26).  In regard to not having seniority restored and mandatory retirement rescinded, Plaintiffs and Howard were treated exactly the same.  Plaintiffs have not pointed to evidence showing that they ever raised the issue of the length of the grace period prior to retirement before bringing this action.

Without more, Howard is not a proper comparator for ADEA purposes.  ALPA indicates that, unlike Plaintiffs, Howard may have had a disability and under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and that United was required to reasonably accommodate Howard's disability.  (ALPA Reply Memorandum of Law in Support of its Motion for Summary Judgment and in Opposition to Plaintiffs' Partial Motion for Summary Judgment "A. Reply" Dkt. No. 120 at 5).  Howard is also not a proper comparator because although Plaintiffs state that Howard was younger, Plaintiffs assert Howard was only 30 months from his 65th birthday.  (PSOF OP ¶ 21).  "The Supreme Court has observed that if an employee who is in the class protected by the ADEA is replaced by someone who is not 'substantially younger' (i.e., ten years or so), no inference of age discrimination is generally appropriate." *Runyon v. Applied Extrusion Techs., Inc.*, 619 F.3d 735, 740 (7th Cir. 2010) (citing *O'Connor v.*

*Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996)). Plaintiffs have not shown that Howard was substantially younger than them, or that ALPA considered the difference significant. Plaintiffs also attempt to argue that the "universe is simply younger people who were allowed to be instructors/evaluators in the place of Plaintiffs." (P. Opp./SJ at 10). Such a generic reference to a "universe" of people does not satisfy the burden to specifically identify a proper comparator.[11] Thus, Plaintiffs have failed to properly identify a comparator outside the protected class who was treated more favorably.

### G. Furloughs

Plaintiffs also theorize that another reason United may have engaged in age discrimination is to find spots for furloughed pilots. (Plaintiffs Statement of Undisputed Material Facts in Support of their Motion for Partial Summary Judgment "PSOF" Dkt. No. 99-3 ¶ 20). It is undisputed that at the relevant time there were approximately 1,400 pilots on furlough. (PSOF ¶ 20). The impact that Plaintiffs' three positions would have had on such a number would have been *de minimis.* Plaintiffs fail to point to evidence to show that the decision to adopt the United Policy was in any way connected to the need to find spots for pilots on furlough and it would be nothing more than speculation to conclude that United violated the ADEA in order to fill three of those 1,400 spots.

### H. Wisdom of United Policy

Plaintiffs also present arguments that focus upon the wisdom of the United Policy. Plaintiffs tout their experience and qualifications and argue that they are better qualified than

---

[11] Plaintiffs also make a vague reference to a provision in the UPA that was created to benefit an unidentified union negotiator. (P. Opp./SJ at 27). Plaintiffs, however, fail to cite to evidence that references any union negotiator or supports such facts. (P. Opp./SJ at 27); (PSOF ¶ 21); (P. Ex. 44).

other younger I/Es.  While Plaintiffs are entitled to their opinions, ALPA and United are likewise entitled to the opinion that an I/E who could fly the line was better qualified.  Plaintiffs have not shown that any of the younger I/Es were unqualified for the position.

Plaintiffs challenge the opinion of ALPA and its expert witness Captain Jameel F. Joseph that flying the line cannot be replicated in a simulator or by sitting in a jump seat and observing pilots.[12]  Joseph concludes that "Instructors and Evaluators gain relevant experience and knowledge from recently operating an aircraft in revenue service that cannot be gained from operating airplane simulators or from observing line operations from the jumpseat."  (P. Ex. 22 at 17).  Joseph indicates in his declaration facts to support his conclusion such as the following:

> Flight operations, by definition, begin well in advance of the line pilot entering the cockpit, and are fluid and dynamic in nature, with each leg of each trip being distinctly different.  The ability to dispatch a flight with known mechanical deficiencies, for instance, will determine operational restrictions or unique procedures, with very little time for the flight crew to make critical decisions and fully comprehend the impact of these mechanical deficiencies and there operational consequences.  This pressure cannot be simulated and cannot be shared through observation.  Only I/Es with recent line-operational experience, under these circumstances, can relate to, identify, adjust, and translate these pressures and experiences into actual training and evaluation – such exposure cannot be simulated.

(Joseph Decl. ¶ 8).  Joseph also states that "[e]ach airport has unique local procedure[s] for ground aircraft movement, and often construction activities will directly impact critical ground movement," and "[a]ctual, not simulated, interaction with these conditions by the I/E cadre will not only familiarize them with the unique set of actual operational circumstances but also provide first-hand experience with the challenges the line pilots may experience."  (Joseph Decl.

---

[12] Plaintiffs cite to *W. Air Lines, Inc. v. Criswell*, 472 U.S. 400 (1985) for the proposition that expert reports such as Joseph's reports are inappropriate in ADEA case and that "[e]ven in cases involving public safety, the ADEA plainly does not permit the trier of fact to give complete deference to the employer's decision."  472 U.S. at 423; (P. Opp./SJ at  11).  The issue before the court in *Criswell* was "whether the jury was properly instructed on the elements of the BFOQ defense."  *Id.*  ALPA is not pursuing any such defense at this juncture.

¶ 8). Joseph also explains how familiarity and actual experience dealing with unique factors in take-off/departure/climb procedures, en route procedures, and decent/arrival/landing procedures make actual line experience superior to any experience in a simulator or viewing from a jump seat. (Joseph Decl. ¶ 8). Plaintiffs clearly disagree with Joseph's conclusions and believe that the same experience can be gained through a simulator or by sitting in a jump seat. Plaintiffs have not pointed to evidence that shows that training in a simulator which seeks to replicate as best as possible the actual flight experience or sitting in a jump seat can provide the exact same experience as actually piloting a commercial flight. Plaintiffs are asking this court to find that their proposed training is the equivalent to flying the line. Absent a showing that the United Policy was a pretext for age discrimination, however, this court in not a proper venue to litigate the wisdom of ALPA's business decisions.

Plaintiffs also argue that there is no empirical evidence that shows that the United Policy makes better-trained I/Es. ALPA, however, is not required to provide studies and other empirical evidence to support its policy. The United Policy is not on trial in this case. The issue before the court is whether ALPA used the policy as a pretext to discriminate based upon age.[13] Plaintiffs contend that they have evidence that the newest simulators are very good at replicating the "feel of the aircraft" and that actually flying the line is not necessary. (PSOF OP ¶ 6). Even if Plaintiffs could point to sufficient evidence to show that they are right and ALPA was mistaken in believing that the United Policy was superior to other training programs that rely upon simulators, Plaintiffs cannot prevail. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696

---

[13] Plaintiffs also argue that ALPA must show a "rational connection" between the I/E job and its qualifications. (P. Opp./SJ at 9). Plaintiffs, however, in support quote *DiIulio v. Bd. of Fire & Police Comm'rs of City of Northlake*, 682 F.2d 666 (7th Cir. 1982). *DiIulio* was not an ADEA case and in making such a statement, the court was addressing constitutional law and the "constitutional requirements of due process." *Id.* at 668-69. *DiIulio* is thus not on point.

(7th Cir. 2006) (stating that "[p]retext is not necessarily established merely when the plaintiff demonstrates the employer's reason was mistaken"). It is not role of this court to interfere with United's training policies unless such policies are unlawful or unsafe.[14] *See Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) (stating that "courts are not superpersonnel department[s]" charged with determining best business practices") (internal quotations omitted) (quoting *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005)).

Plaintiffs also contend that federal law does not require I/E's to fly the line and that other airlines employ NLQFIs. Such facts are irrelevant. United is not required to follow the minimum under federal law. Nor is United required to follow training practices simply because its competitors follow them.[15] If United's training is inferior to other airlines as Plaintiffs claim, then the free market will reward other more forward-thinking airlines.

In *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616 (7th Cir. 2001), the Seventh Circuit was presented with similar facts as in the instant action. In that case, the plaintiff applied for a position that required an applicant to have one of several degrees such as Education. *Id.* at 621. The plaintiff argued that the qualification was not reasonable and that the employer should have considered the plaintiff's experience to be the equivalent as the required degree. *Id.* The Court concluded that it did not need to "decide whether it is reasonable for an employer to place value

---

[14] Plaintiffs have not pointed to any evidence that shows that the United Policy, which has been in place since 1989 has created any material risks to the safety of operations in any flights.

[15] Plaintiffs contend that this court held in its prior ruling that the reasonableness of the United Policy should be adjudicated. Plaintiffs point to the prior ruling in this case on the motion for judgment on the pleadings when the court stated that it was "unwilling to hold that the I/E line-flying requirement is reasonable based only on the fact that it was United's longstanding practice, without the benefit of any evidence that might be developed in discovery to show that, for all its longevity, the practice was totally unreasonable." *Bader v. Air Line Pilots Ass'n*, 113 F. Supp. 3d 990, 997 (N.D. Ill. 2015). Plaintiffs, however take that statement out of context. In making the above statement the court was addressing "whether requiring I/Es to be line-qualified is a" reasonable factor other than age ("RFOA") to satisfy the RFOA defense. *Id.* At the summary judgment stage, ALPA is no longer pursuing a RFOA defense. (A. Reply at 6). Nor is ALPA pursing a bona fide occupational qualification defense. (A. Reply at 6).

on the actual receipt of a particular degree, irrespective of the applicant's experience," and the Court declined to "presume to mandate that the [employer] equate [the plaintiff's] teaching experience with an actual degree in Education." *Id.* The Court then proceeded to indicate that "[w]hat the qualifications for a position are, even if those qualifications change, is a business decision, one courts should not interfere with" and that the Court does not "tell employers what the requirements for a job must be." *Id.* (internal quotations omitted) (quoting *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 765 (7th Cir. 2001)). Similarly in the instant action, Plaintiffs are attempting to get this court to mandate that United find that training in a simulator or sitting in a jump seat is the equivalent to flying the line. As in *Schaffner*, this court will likewise refrain from telling an employer how to operate its business in regard to conduct that does not run afoul of the law.

The Seventh Circuit has made it clear that in employment discrimination cases, the court does "not act as a 'superpersonnel department.'" *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 710 (7th Cir. 2017); *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 883 (7th Cir. 2016) (stating that the "record d[id] not suggest that [the defendant's] rationale was insincere or pretextual, and [the Court does] not sit as a superpersonnel department[ ] that judges the wisdom of [the defendant's] decisions") (internal quotations omitted) (quoting *Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010)); *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 878 (7th Cir. 2014) (stating that "[a]s [the Court has] stated repeatedly, it is not [the Court's] province to sit as a super-personnel department evaluating the wisdom of an employer's staffing decisions"); *Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999) (stating that "as [the Court has] noted on numerous occasions, th[e] Court does not sit as a superpersonnel department that reexamines an entity's business decisions") (internal quotations omitted) (quoting *Lindemann v.*

*Mobil Oil Corp.*, 141 F.3d 290, 300 (7th Cir. 1998)).  That is exactly what Plaintiffs are asking the court to do in this case.

As indicated above, Plaintiffs can utilize the *McDonnell Douglas* burden-shifting method to establish a prima facie case of discrimination.  If a defendant offers a legitimate non-discriminatory reason for its actions, the plaintiffs must show that the reason is a pretext for unlawful discrimination.  *Bates v. City of Chicago*, 726 F.3d 951, 956 (7th Cir. 2013).  As part of that method, Plaintiffs must establish that ALPA's legitimate non-discriminatory reason was a pretext for unlawful discrimination.  *Id.*  The Seventh Circuit has indicated time and time again that "[t]he focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered."  *Id.* (internal quotations omitted) (quoting *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)); *see also Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) (stating that "[a]n unwise employment decision does not automatically rise to the level of pretext; rather, a party establishes pretext with evidence that the employer's stated reason or the employment decision 'was a lie—not just an error, oddity, or oversight'") (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010)); *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007) (stating that "[t]he focus of a pretext inquiry is whether the employer's reason is honest, not whether it is accurate or wise"). The Seventh Circuit has stated that in an ADEA case, the court must remain focused on whether there is discrimination based on age and be mindful that it is not the court's "role to question the wisdom of a company's decisions on how to run its business, only to assure that such decisions are not intended to provide cover for illegal discrimination."  *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946–47 (7th Cir. 2006)).

Although Plaintiffs criticize ALPA's belief that flying the line helps an I/E to become better at his or her job, Plaintiffs have not shown that ALPA's given reason is other than a legitimate non-discriminatory reason for its actions. The court acknowledges that in certain situations where actions by a company are extremely unwise from a business standpoint, such conduct could be suspicious, and could be circumstantial evidence that might be used to support an ADEA claim. In this case, however, Plaintiffs have fallen far short of pointing to evidence to support such a theory.[16] Joseph provides ample details concerning the rationale underlying the United Policy. The fact that the policy has been in place since 1989 further suggests its justifiable basis and renders ALPA's decision to include it in the UPA less suspicious.

Whether ALPA is being honest about its decision to adopt the long standing policy does involve a question of fact. Plaintiffs, however, must do more than rely on their allegations and must point to sufficient evidence for a reasonable trier of fact to do more than speculate that ALPA's decision to continue a longstanding policy concealed some hidden animus based on age. *See Grant*, 870 F.3d at 568 (stating that "[a]s the put up or shut up moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine

---

[16] The Seventh Circuit has stated that "the more objectively reasonable a belief is, the more likely it will seem that the belief was honestly held," but "[a]n inquiry into pretext requires that [the Court] evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 795 (7th Cir. 2015) (internal quotations omitted) (quoting *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001) and *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 506 (7th Cir. 2014)). The Court further explained that "[t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain [its decision.]" *Id.* (internal quotations omitted). It is important to note that in the facts of this case, the policy in question that is connected to age is logically connected to the I/E position. The policy simply requires that I/Es have current real life experience in the precise piloting tasks that they are expected to teach pilots. Such a requirement clearly falls within the broad range of reasonableness.

dispute of material fact for trial") (internal quotations omitted) (quoting *Harney v. praSpeedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)).  Plaintiffs have failed to point to sufficient evidence for a reasonable trier of fact to find in their favor.

Finally, as stated above, it is important to note that in order to succeed on their ADEA claims, Plaintiffs must show more than it is possible that age was a consideration in ALPA's decision making process.  *See Gross*, 557 U.S. at 174 (stating that "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor").  Plaintiffs must show that age "'had a determinative influence on the outcome.'"  *Mullin*, 732 F.3d at 776 (quoting *Van Antwerp*, 627 F.3d at 297).  Based on the above, even when considering the evidence in its totality and viewing it in a manner most favorable to Plaintiffs, no reasonable fact finder could find in Plaintiffs' favor on the ADEA disparate treatment claims or state law age discrimination claims.  Therefore, ALPA's motion for summary judgment on that ADEA claims is granted and Plaintiffs' partial motion for summary judgment on such claims is denied.

III.  Duty of Fair Representation Claims

ALPA argues that the DFR claims are barred by the statute of limitations.  ALPA also contends that even if the claims are timely, there is not sufficient evidence to show that ALPA breached its duty of fair representation.

A.  Statute of Limitations

ALPA contends that Plaintiffs failed to bring the DFR claims within the statute of limitations period.  A six-month statute of limitations applies to DFR claims brought under the

RLA. *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1271 (7th Cir. 1985) (explaining that the DFR claim against the airline's union, which is subject to the RLA, must be brought under the RLA instead of under the LMRA). Generally, when a DFR claim is based upon the entry into a collective bargaining agreement, the claim accrues "when the contract is signed." *Id.* at 1273. In the instant action, it is undisputed that UPA, which included LOA 18, was executed on December 18, 2012. (P. Opp./SJ at 4). Plaintiffs did not bring the instant action until April 7, 2014, which was beyond the six-month limitations period. Plaintiffs argue, however, that the limitations period was tolled because of representations by ALPA. If an employee elects to pursue internal union procedures, "during the pendency of those union procedures, the six-month statute of limitations is tolled, to commence running only when the union procedures are exhausted." *Frandsen v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees*, 782 F.2d 674, 681 (7th Cir. 1986). It is undisputed that in June 2013, Doyle delivered the June 2013 Letter to ALPA. (ASOF ¶ 21). ALPA argues that it responded in a letter dated July 1, 2013 ("July 2013 Letter"), sent by Continental Master Executive Council Chairman Jay Pierce. (ASOF ¶ 22). ALPA contends that in the letter it informed Plaintiffs that the relief sought by Plaintiffs was beyond ALPA's control and that the requested relief was denied. ALPA argues that at that point at the latest, Plaintiffs DFR claims began to run. A review of the actual language in the July 2013 Letter, however, does not indicate that ALPA had come to any sort of finality in regard to Plaintiffs' requests. As ALPA points out, it informed Plaintiffs that it did not "have unilateral authority to strike or modify any provision of the" UPA. (P. Ex. 33). If that was all that ALPA conveyed it certainly would have given Plaintiffs a final answer to their request. In the letter, however, ALPA also states that it has "referred this matter to the ALPA Legal Department for review." (P. Ex. 33). If, as ALPA

now contends, ALPA had made a final determination, it would not have needed to refer the matter to the legal department for further review. In the July 2013 Letter, ALPA also states that it "is a matter, depending on the circumstances, that would have to be considered by, at the very least both MEC's" and that it would "make sure that the matter is reviewed as described above." (P. Ex. 33). Based upon such representations by ALPA, Plaintiffs were justified in concluding that the further "review" that ALPA repeatedly referenced in the July 2013 letter was ongoing and that ALPA had not reached a final decision.

ALPA contends that Plaintiffs admitted that they were not holding out any hope after receiving the July 2013 Letter. (A. SJ at 12-13). In make such an assertion, however, ALPA merely rely on a statement made by Doyle in his deposition as to his own personal belief. (ASOF ¶ 22). That statement does not show that the other two Plaintiffs did not hold out hope. Nor did Doyle specifically represent that he concluded that the July 2013 Letter was a final decision and that he did not hold out hope that the final decision would be in his favor. When Doyle was asked to summarize the July 2013 Letter by ALPA's counsel, Doyle merely stated that "the bottom line was that" ALPA could not help Plaintiffs" and that "[i]t was beyond [ALPA's] control." (Doyle Dep. at 64). Doyle was not asked by ALPA's counsel about the references in the July 2013 Letter to the further review by ALPA or whether Doyle was hoping that after such review ALPA would support his requests. Thus, the undisputed facts do not indicate that Plaintiffs were derelict in the prosecution of their rights against ALPA for breach of the duty of fair representation and the DFR claims are timely.

B.  Breach of Duty of Fair Representation

The parties contend that they have pointed to sufficient evidence to prevail on the merits of the DFR claims as a matter of law.  A union breaches its duty of fair representation if it engages in actions that are "arbitrary, discriminatory, or in bad faith. . . ."  *Cunningham v. Air Line Pilots Ass'n, Int'l*, 769 F.3d 539, 541 (7th Cir. 2014) (quoting *Vaca v. Sipes*, 386 U.S. 171 (1967)).  The duty of fair representation "applies to negotiating collective bargaining agreements as well as to enforcing them."  *Id.* (explaining that in *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65 (1991), the Supreme Court held that "a union can be held liable for negotiating an irrational agreement with an employer").  A court presented with a DFR claim, however, does not engage in a *de novo* review of the negotiations by the union.  *Id.* at 542.   In assessing whether a union has breached its duty of fair representation, "[a]ny substantive examination of a union's performance . . . must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities."  *Id.* (quoting *O'Neill*, 499 U.S. at 78).   A union breaches its duty of fair representation if it engages in discrimination that is "'intentional, severe, and unrelated to legitimate union objectives.'"  *Glenn v. Terminal R.R. Ass'n of St. Louis*, No. 14 CV 328, 2015 WL 4272970, at *14 (S.D. Ill. July 14, 2015) (quoting *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)).  The "final product of the bargaining process may constitute evidence of" an arbitrary action and breach of the duty of fair representation "only if it can be fairly characterized as so far outside a wide range of reasonableness . . . that it is wholly irrational or arbitrary."  *Cunningham*, 769 F.3d at 542 (quoting *O'Neill*, 499 U.S. at 78).

Plaintiffs contend that ALPA's agreement to adopt the United Policy in the UPA was discriminatory and arbitrary. ALPA has presented evidence showing that it agreed to the UPA

based on the legitimate interest in having I/Es receive the best available training. Although

Plaintiffs vehemently dispute ALPA's conclusion, Plaintiffs have failed to show that ALPA's

interest was not related to legitimate union objectives. It is an unfortunate reality that when any

decision by a union is made for the greater good of its members, some members may be

negatively affected as well. That does not mean that ALPA acted in an unlawful and

discriminatory manner. In regard to the arbitrariness of ALPA's conduct, Plaintiffs fall far short

of making any such showing. ALPA has provided detail explaining the reasoning behind the

belief that flying the line has training value. Plaintiffs' many arguments relating to the wisdom

of the United Policy such as the fact that other airlines don't have such a policy fail to show that

ALPA acted beyond the wide range of its discretion. The fact that United had such a policy for

such an extended period is a further indication that there is a legitimate basis for ALPA to agree

to the adoption of the United Policy in the UPA.

Even if Plaintiffs were able to establish that considering all factors and empirical

evidence United would be better off employing NLQFIs, that would not be sufficient to show

that ALPA breached its duty of fair representation. ALPA is allowed discretion and latitude in

executing its union functions and this court is not here to second guess ALPA's decision-making

absent a serious dereliction in its duty to protect the rights of those it represents. In adopting

United's long-standing Policy into the UPA, ALPA was not acting outside the wide range of

reasonableness. It is also worth noting that ALPA did obtain for Plaintiffs an additional twelve

months of work with United despite the fact that they were not qualified to fly the line and that

during those twelve months Plaintiffs received a 40% pay increase over what they had earned

with Continental. (ASOF ¶ 20). Plaintiffs have failed to point to sufficient evidence that would

indicate that ALPA breached its duty of fair representation through discrimination or arbitrary

conduct. Therefore, ALPA's motion for summary judgment on the DFR claims is granted and Plaintiffs' partial motion for summary judgment on the DFR claims is denied.

## CONCLUSION

For the reasons set forth above, ALPA's motion for summary judgment [73] is granted and Plaintiffs' partial motion for summary judgment [114] is denied. Civil case terminated.

Date: 6/4/18

_____
Jorge L. Alonso
United States District Judge